IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BARBARA JEAN CARPENTER,

                 Plaintiff,                  OPINION & ORDER

   v.

                                                                13-cv-026-wmc

CAROLYN COLVIN,
Commissioner for Social Security,

                 Defendant.

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Barbara Carpenter seeks judicial review of an administrative law judge's finding that Carpenter was not disabled within the meaning of the Social Security Act. Carpenter contends that remand is necessary because the administrative law judge erred in failing to address properly the opinions of two treating physicians. Carpenter also contends that these errors resulted in a deficient Residual Functional Capacity determination. For the reasons set forth below, the court will remand the case to the Commissioner for further proceedings.

## BACKGROUND

### I.    Procedural History

On September 23, 2011, Administrative Law Judge ("ALJ") John Pleuss issued a decision denying Carpenter's application for supplemental security income. (AR 61.)[1] Carpenter filed a timely request for review by the Appeals Council, which also denied her request on November 19, 2012, making the ALJ's decision the final determination of the Commissioner. (AR 1.) On January 15, 2013, Carpenter filed a timely complaint for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

---

[1] Cites in this Order are drawn from the Administrative Record. (Dkt. #7.)

II.     Facts

Carpenter is a 23-year-old woman alleging disability due to mental impairment. (AR 55.) She alleges the onset of an eligible disability beginning on October 15, 1998, shortly before her eighth birthday. (AR 177.) Carpenter graduated from high school in 2009. (AR 12-13.) Despite working with a vocational rehabilitation program, has not held a job since graduating. (*Id.*, AR 59-60.)[2] At her hearing before the ALJ, Carpenter testified that she has been actively searching for employment but was, so far, unsuccessful. (AR 23-24.)

Since entering kindergarten, Carpenter has received special education services to assist her with difficulties in reading, writing and math, as well as to accommodate her diagnosis of ADHD. (AR 192.) As an adult, Carpenter has also had significant problems concentrating and needs to be shown how to complete ordinary tasks (*i.e.*, cooking, bathing her daughter, etc.). (AR 14, 28.) While receiving her driver's license, she completed the required written test by having the questions orally read to her. (AR 14.) At the hearing, Carpenter testified that she routinely starts tasks, but then gets side-tracked and forgets to complete them. (AR 20.)

Carpenter's medical history contains records from a number of sources. Carpenter identifies two medical opinions relevant to this case.[3] The first is from Carpenter's primary care physician, Beth E. Potter M.D. On September 8, 2009, in response to a request for medical information from the Wisconsin Department of Workforce Development, Dr. Potter listed Carpenter's diagnoses as ADHD and mild mental retardation. (AR 431.) Dr. Potter opined

---

[2] Carpenter spent a summer working at McDonald's, performing janitorial tasks, but she left at the end of the summer to return to school. (AR 13, 22.)

[3] In his written decision, the ALJ also referred to the medical opinion of Dr. Jack Spear, a state disability psychological consultant. Dr. Spear examined Carpenter on December 4, 2009, and prepared a report explaining his opinion on Carpenter's functional limitations. Specifically, Dr. Spear concluded that Carpenter had: (1) mild limitation in "activities of daily living;" (2) moderate limitation in "maintaining social functioning;" (3) moderate limitation in "maintaining concentration, persistence or pace;" and (4) no episodes of "decompensation." (AR 338.) Dr. Spear noted that Carpenter was "capable of the basic mental demands of unskilled work." (AR 344.)

that Carpenter's cognitive impairments would limit her ability to meet an employer's expectations for entry-level workers. (AR 434.) She also assigned Carpenter a Global Assessment of Functioning ("GAF") at 31. (AR 431.)[4] While Dr. Potter indicated she was "unsure" about any limits Carpenter had in terms of interpersonal skills, Dr. Porter noted that Carpenter would need reminders to stay on task and perform work duties. (AR 433.)

The second medical opinion is from Philip F. Giampietro, M.D., Ph.D., and professor of medical genetics at the University of Wisconsin. On March 30, 2011,[5] in a letter following up on an earlier visit, Dr. Giampietro discussed Carpenter's diagnosis of 22q11.2 duplication syndrome. Dr. Giampietro explained that the clinical effects of the syndrome "can range from 'normal' to cognitive impairment/learning disability, delayed psychomotor development, growth retardation, and/or low muscle tone." (AR 542.) Aware of her pending application for supplemental social security income, Dr. Giampietro told Carpenter that

> it is very important that those individuals evaluating your disability claim be aware of your new diagnosis of 22q11.2 duplication syndrome. As I mentioned, individuals with 22q11.2 duplication syndrome can have a variable clinical presentation. I do believe that your learning disabilities are definitely related to your 22q11.2 duplication syndrome. I would definitely support your application for disability on the basis of your underlying genetic condition.

(AR 542.)

At the August 4, 2011, hearing before the ALJ, Carpenter testified, as did Kimberly Schmudlach, her mother. Ms. Schmudlach explained that she spoke to Carpenter nearly every day, and visited her two or three times per week. (AR 29-30.) Ms. Schmudlach also testified

---

[4] According to the DSM-IV, a GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. Text Revision 2000).

[5] By this time, Carpenter had already filed her application for supplemental social security income, but the ALJ admitted the letter into evidence. (AR 10.)

that she and Carpenter's grandmother helped care for Carpenter's daughter. (AR 30.) With respect to Carpenter's ability to perform daily tasks, Ms. Schmudlach indicated that Carpenter usually did not follow through on completing something without another person giving her step-by-step instructions and constant reminders, and that Carpenter struggled to manage money responsibly. (AR 32-35.)

The ALJ also heard testimony from Allen Noll, a vocational expert ("VE"). Mr. Noll first asked Carpenter questions about her prior work at McDonald's and then answered questions from the ALJ and Carpenter's attorney. Mr. Noll first answered questions about a hypothetical person with Carpenter's age, education, and work history, whose "ability is limited, but satisfactory with regard to dealing with the public, using judgment, interacting with supervisors, functioning independently, maintaining attention and concentration, understanding, remembering, and carrying out simple instructions, and relating appropriately in social situations." (AR 39.) Mr. Noll was then instructed to assume that the hypothetical person's "ability is seriously limited, but not precluded with regard to understanding, remembering, and carrying out detailed job instructions." (*Id.*)

Mr. Noll testified that there were still several jobs for the seriously limited person. (AR 40-41.) Carpenter's attorney then modified the hypothetical to include a third-grade reading level and fifth-grade math level. Mr. Noll testified that these added restrictions would significantly lower the number of available jobs, but that there would still be some work for such a person. (AR 46.)

### III. The ALJ's Decision

On September 23, 2011, the ALJ issued his written decision. The ALJ first concluded that Carpenter had not engaged in substantial gainful activity since August 4, 2009. (AR 54.)

He further found that Carpenter had borderline intellectual functioning and an affective disorder, but concluded that these impairments did not meet or equal the severity of a listed impairment. (*Id.*)

Before moving through the rest of his analysis, the ALJ also concluded that Carpenter had the RFC to perform a wide range of work at all exertional levels with the following limitations:

> [s]he [was] limited but satisfactory in her ability to: deal with the public; use judgment; interact with supervisors; function independently; maintain attention and concentration; understand, remember, and carry out simple instructions; and relate appropriately in social situations. . . . [She was] seriously limited but not precluded from understanding, remembering, and carrying out detailed instructions [and] limited to work with only a 3rd grade reading ability and 5th grade mathematical ability.

(AR 57.)

The ALJ ended his opinion by determining that Carpenter had no past relevant work, had at least a high school education and was able to communicate in English. (AR 59.) Because of her RFC, the ALJ ultimately determined that there were jobs in the national economy that Carpenter could perform and, therefore, that she had not been under a disability since the date of her application. (AR 60.)

OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility

or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). Rather, "the court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Here, the court concludes that the ALJ erred in failing to properly address the opinions of Drs. Potter and Giampietro, as well as the lay opinion of Carpenter's mother. Together, these errors resulted in a deficient RFC determination, which requires reconsideration on remand.

## I. Carpenter's Treating Physicians

Carpenter's primary argument is that the ALJ erred in failing to give proper weight to the opinions of her treating physicians. She relies on the "treating physician" rule, which requires an ALJ "give greater weight to the opinion of the claimant's treating physician's assessment than to the opinion of a non-treating physician." *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1079 (7th Cir. 2012).[6] This rule is not absolute, particularly when there is contrary medical evidence in the record, but when the ALJ *does* discount or reject a treating physician's

---

[6] The rule, codified in 20 C.F.R. § 416.927(c)(2), provides that: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." (emphasis added).

6

opinion, he "must provide a sound explanation" before doing so. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Moreover, the explanation must allow a reviewing court to conclude that the ALJ actually "weighed the merits of [a source's] opinion [and] engaged in the careful analysis required by the regulations and case law." *Id.*

To properly frame the ALJ's analysis, the regulations provide a checklist of factors to facilitate his legal reasoning and explanation of the evidence. Such factors help determine what weight the ALJ should give to the medical opinions in the record, providing transparency in the ALJ's reasoning for judicial review. *See* SSR 06-3p and § 404.1527(c). If an ALJ does not properly analyze these factors and afford weight to an opinion, remand is warranted. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (remanding when "the ALJ failed to determine the weight to be accorded [a doctor's] opinion in accordance with Social Security Administration regulations"). The factors include: the length of the relationship and frequency of examination; the nature and extent of the relationship; how well the source supports his opinion (*i.e.*, with objective evidence and laboratory tests); how consistent the opinion is with the rest of the record; and whether the source is a specialist in the relevant area. 20 C.F.R. § 416.927(c). On appeal, the Commissioner cannot cure deficiencies in the ALJ's explanation by supplying his own evaluation of a medical opinion, nor is it appropriate for this court to engage in its *own* analysis of the factors -- "what matters are the reasons articulated *by the ALJ*." *Jelinek*, 662 F.3d at 812 (original emphasis).

In this case, the record before the ALJ contained medical evidence from two of Carpenter's treating physicians -- Dr. Potter and Dr. Giampietro. The ALJ also had evidence

7

from Carpenter's therapist, and Dr. Jack Spear, a state disability psychological consultant.[7] In making his RFC determination, the ALJ began by stating:

> I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(AR 58.) Carpenter argues that the ALJ's analysis failed to sufficiently articulate his reasons for rejecting her treating physicians' opinions outright. Specifically, Carpenter notes that the ALJ did not discuss the factors in 20 C.F.R. § 416.927(c) for determining what weight, if any, to afford to a medical opinion.

The Commissioner essentially concedes that the ALJ never explicitly mentioned Dr. Potter or Dr. Giampietro in his decision.[8] The Commissioner also acknowledges that the ALJ failed to assign weight to their opinions despite the statute requiring analysis of the factors as stated in 20 C.F.R. § 416.927(c).[9] Indeed, beyond conclusory statements, the ALJ's decision offers little (if anything) to evaluate whether he, in fact, used the appropriate framework to evaluate Carpenter's medical evidence.

Without this discussion, the court cannot verify that the ALJ has undertaken the requisite analysis. This, alone, is enough to warrant remand. *See Steele v. Barnhart*, 290 F.3d

---

[7] Dr. Spear is an "examining source," not a "treating source." While the regulations generally direct an ALJ to give more weight to an examining source than a non-examining source, an ALJ must, in turn, generally give more weight to a treating source than an examining source. 20 C.F.R. § 416.927(c).

[8] *See Tapia v. Astrue,* No. 11-cv-970, 2012 WL 3100380, at *9 (E.D. Wis. July 30, 2012) (remand is appropriate when "there is no explanation of what weight was actually given to [a medical] opinion as required by the Social Security rules"); *Edgar v. Astrue,* No. 09-cv-264, 2010 WL 56024, at *10 (W.D. Wis. Jan. 6, 2010) ("If the administrative law judge did not assign controlling weight to [a treating source's] opinion, then he was required to say how much weight he was giving it and to provide 'good reasons' for that weight.").

[9] While the ALJ cited to some of Dr. Potter's records, he ignored the most relevant of her reports -- a questionnaire she completed in which she answered questions about Carpenter's functional capacity. (*See* AR 431-36.)

8

936, 941 (7th Cir. 2002) ("[R]egardless [of] whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [the court's] review to the reasons supplied by the ALJ.").

In response, the Commissioner argues that deficiencies exist in the medical opinions of Carpenter's treating physicians. Specifically, the Commissioner argues: (1) Dr. Potter's responses to the questionnaire were too "open-ended" and "failed to identify any specific concentration-related work restrictions," (Def.'s Opp'n (dkt. #9) 5); and (2) Dr. Giampietro's letter to Carpenter does not qualify as a medical opinion (*Id.* at 7).

The Commissioner appears to argue that these deficiencies somehow excused the ALJ from his obligation to analyze and discuss relevant medical evidence. That is not the law. Even if it were, the Commissioner's argument misunderstands the record. The ALJ's deficiencies with respect to Drs. Potter and Giampietro's evidence are addressed in turn.

First, the Commissioner asserts that Dr. Potter's responses to his questionnaire do not identify any specific functional limitations. A review of the questionnaire and the answers it solicited from Dr. Potter directly contradicts this position. For example, Dr. Potter was asked about Carpenter's "Communication Limitations." (AR 432.) The questionnaire explained that "[c]ommunication means the physical, cognitive and psychological ability to *exchange information effectively when participating in work related activities*." (*Id*) (emphasis added). Dr. Potter responded that Carpenter would have difficulty articulating her needs and understanding written language or expressing herself in writing. (*Id.*) Dr. Potter was also asked about Carpenter's "Self-Care Limitations," or "the physical, cognitive and psychological ability to *perform activities of daily living at a level which allows the individual to participate in work-related activities*." (AR 433) (emphasis added). Dr. Potter answered that Carpenter would need reminders to stay on task or complete

9

work duties. (*Id.*)  Finally, Dr. Potter was asked about "Self-Direction Limitations," which the questionnaire defines as "the physical, cognitive and psychological ability to initiate, organized, and *make decisions in one's own best interest at a level allowing the individual to participate in work-related activities*."  (AR 433) (emphasis added).  Here, Dr. Potter responded that Carpenter would have difficulty following things through.  (*Id.*)

Contrary to the Commissioner's argument, Dr. Potter's responses are also directly relevant to Carpenter's condition.  To characterize the opinion otherwise misconstrues what Dr. Potter specifically states in the questionnaire.

Even if the Commissioner's criticisms had any merit, there is nothing in the record to suggest that *the ALJ* viewed Dr. Potter's responses as being inadequate; making the Commissioner's argument nothing more than an impermissible, *ex post* rationale.  S*ee Jelinek*, 662 F.3d at 812.  Dr. Potter's answers must, therefore, be further considered and addressed on remand.

Second, the Commissioner argues that Dr. Giampietro's letter was not a "medical opinion" and, therefore, the ALJ was under no obligation to consider it.  More particularly, the Commissioner argues that "Dr. Giampietro did not provide any statement concerning the severity of Plaintiff's impairment."  (Def.'s Opp'n (dkt. #9) 7.)   This argument also runs counter to the regulations and the statute itself.  Under 20 C.F.R. § 416.927(a)(2), "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."

Several portions of Dr. Giampietro's letter discuss the nature and severity of Carpenter's diagnosis of 22q11.2 duplication syndrome.  He first described the genetic causes of the disease,

and then provided an overview of the clinical manifestations associated with it. These included "cognitive impairment/learning disability, delayed psychomotor development, growth retardation, and/or low muscle tone." (AR 542.) Dr. Giampietro also noted that individuals with the syndrome can have birth defects and autistic features, but that our knowledge about the disease is still incomplete.

> With respect to Carpenter's disability claim, Dr. Giampietro concluded:
>
>> I think it is very important that those individuals evaluating your disability claim be aware of your new diagnosis of 22q11.2 duplication syndrome. As I mentioned, individuals with 22q11.2 duplication syndrome can have a variable clinical presentation. I do believe that your learning disabilities are definitely related to your 22q11.2 duplication syndrome. I would definitely support your application for disability on the basis of your underlying genetic condition.

(AR 542.)

Beyond merely stating that this discussion does not identify what Carpenter can and cannot do because of her chromosome abnormality, the Commissioner offers no analysis or authority for *why* this letter does not qualify as a medical opinion. At least on a facial level, the letter contains relevant information about the nature and severity of Carpenter's 22q11.2 duplication syndrome diagnosis. Even if it did not, the Commissioner is again left with the reality that its criticism is one made after the fact on appeal, rather than by the ALJ in the first instance. On remand, the ALJ must consider what weight, if any, to assign to Dr. Giampietro's opinion, and what effect the opinion has on Carpenter's RFC.

## II. Carpenter's RFC

The need for the ALJ to address the medical opinions above means that the RFC finding will also require reassessment on remand.[10] An RFC assessment is intended to capture the most

---

[10] Given that the case requires remand because of deficiencies related to at least two medical opinions, it would be prudent for the ALJ to take a second look at lay evidence from Ms. Schmudlach as well. *See* SSR

a claimant can do despite his or her limitations. The ALJ was required to assess Carpenter's RFC "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). The types of evidence required to be considered in making an RFC assessment include the claimant's medical history, medical signs and laboratory findings, and medical source statements. *See* SSR 96–8p

In conducting the RFC assessment here, the ALJ concluded the "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are *not credible* to the extent they are inconsistent with the above residual functional capacity." (AR 68.) Given the extensive list of limitations provided by Drs. Potter and Giampietro, it is difficult to draw a conclusion that Carpenter's symptoms were not credible. In any event, the evidence from these two doctors must now be properly addressed in the record.

Because the opinions could bear directly on Carpenter's functional impairments, the court will also remand for consideration of the RFC determination. *See generally Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014) (requiring the ALJ should take a "fresh look" at the RFC on remand).

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Barbara Carpenter application for disability benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further

---

06-03p. As Carpenter's brief rightly points out, Ms. Schmudlach's opinion is roughly consistent with Dr. Potter's opinion that Carpenter needs reminding to stay on task and perform work duties. Cumulatively, these opinions would also tend to reinforce the Carpenter's own credibility. (AR. 433.) To the extent that Ms. Schmudlach's testimony impacts the RFC assessment, the ALJ may also want to consider it on remand.

proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

    Entered this 30th day of September, 2014.

                  BY THE COURT:

                  /s/

                  _____
                  WILLIAM M. CONLEY
                  District Judge